IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

SHERRY NELSON, as PERSONAL REPRESENTATIVE for THE ESTATE of HOWARD NELSON,

                  Plaintiff,

v.

UNITED STATES OF AMERICA,

                  Defendant.

Case No. 3:16-cv-00181-SLG

## ORDER RE MOTION TO AMEND

Before the Court at Docket 17 is Plaintiff Sherry Nelson's Motion to Amend Pretrial Scheduling Order To Allow Plaintiff To File Her Amended Complaint. The Motion is fully briefed.[1] Oral argument was not requested and was not necessary to the Court's determination.

### INTRODUCTION

Ms. Nelson seeks to amend her Complaint to assert additional claims under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, for negligent supervision, selection, training, and retention of physicians and medical staff, based on the conduct of health care providers at Kanakanak Hospital.[2] The Government opposes the motion on several grounds; it maintains that Ms. Nelson cannot demonstrate good cause as required by Federal Rule of Civil Procedure 16(b)(4) and that the motion is prejudicial and futile.

---

[1] *See* Docket 21 (Government's Opposition); Docket 25 (Ms. Nelson's Reply); Docket 26 (Defendant's Notice of Supp. Auth.); Docket 27 (Plaintiff's Notice of Supp. Auth.).

[2] *See* Docket 17 (Motion to Amend) at 4.

## BACKGROUND

On August 15, 2016, Plaintiff Sherry Nelson filed a Complaint against the United States under the Federal Tort Claims Act, alleging that the negligent conduct of "Doctors and employees" of the Indian Health Service ("IHS") at the Kanakanak Hospital and/or the Bristol Bay Area Health Corporation ("BBAHC") caused the death of her husband, Howard Nelson.[3] Ms. Nelson had previously filed an administrative claim with IHS regarding her husband's death, to which the agency failed to respond within six months.[4] In its Answer, filed on October 21, 2016, the Government denied that two of the named doctors, Dr. Julie Jacobs and Dr. Jeffrey Westerfield, were employed by IHS, stating that they were "locum tenens contractors."[5] In the parties' February 10, 2017 Report of Rule 26 Planning Meeting, they indicated that there were no "preliminary motions as to jurisdiction, venue, arbitration, and/or statutes of limitation that should be filed within 60 days."[6] The Government did not provide copies of the locum tenens agreements in its initial Rule 26 disclosures made on February 24, 2017.[7] The Scheduling and Planning Order required all motions to amend the pleadings, including motions to add parties, to

---

[3] *See* Docket 1 (Complaint) at 1–6, ¶ 1–23.

[4] *See* Docket 21-1 (SF-95 Form); Docket 1 at 2, ¶ 5.

[5] *See* Docket 11 (Government's Answer) at 2, ¶ 4.

[6] *See* Docket 14 (Rule 26 Report) at 5.

[7] Docket 17 at 2.

Case No. 3:16-cv-00181-SLG
Order Re Motion To Amend
Page 2 of 13

be "served and filed not later than April 30, 2017."[8]  On May 23, 2017, the Government notified Ms. Nelson that it sought to amend its Answer to assert an affirmative defense that because the hospital did not directly employ Dr. Jacobs and Dr. Westerfield, the Government could not be liable for their conduct.[9]  On June 19, 2017, Ms. Nelson requested copies of the locum tenens agreements.[10]  On June 22, 2017, the Government provided the contracts.[11]  On July 7, 2017, Ms. Nelson filed her motion to amend the Complaint to include claims of negligent retention and supervision.[12]

## DISCUSSION

### 1. Jurisdiction

Ms. Nelson asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*.  Ms. Nelson has previously filed an administrative claim pursuant to 28 U.S.C. § 2672, and the agency did not act upon the claim within six months of filing.[13]  For the reasons discussed below, the Court finds that the prior administrative claim provided adequate notice of the

---

[8] Docket 15 (Scheduling Order) at 5.

[9] Docket 18 (Declaration) at 3, ¶ 8; *see* Docket 18-1 (Email).

[10] Docket 18 at 2.

[11] Docket 17 at 2.

[12] *See* Docket 17.

[13] Docket 21-1 at 1.

proposed amended claims that Ms. Nelson now seeks to add and over which the Court has subject matter jurisdiction.[14]

## 2. Legal Standard

Ms. Nelson brings her motion for leave to amend under both Rule 15(a) and Rule 16(b)(4). Rule 15(a) provides that "[t]he court should freely give leave when justice so requires." But when a motion to amend is made after the deadline for amendment specified in a Rule 16(b) scheduling order, the party seeking amendment must first show "good cause" to modify the expired deadline in the scheduling order.[15] Here, the Court's Scheduling and Planning Order required that all motions to amend "be served and filed not later than April 30, 2017."[16]

To amend the scheduling order so as to permit an amended pleading at this time, Ms. Nelson must show "good cause." "Unlike Rule 15(a)'s liberal amendment policy . . . Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking

---

[14] At Docket 29 is the Government's Motion to Dismiss For Lack of Jurisdiction as to the alleged negligent actions or omissions of Dr. Jacobs and Dr. Westerfield; that motion is not yet ripe and the Court expresses no opinion on that motion at this juncture.

[15] *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). Rule 16(e) provides that a court may only modify a scheduling order after a pretrial conference to prevent "manifest injustice." Here, there was no pretrial conference.

[16] *See* Docket 15 at 5. The order also provided, "Thereafter, a party must seek leave of the Court to modify this deadline. *See* Rule 16(b)(3)(A) and (b)(4)."

Case No. 3:16-cv-00181-SLG
Order Re Motion To Amend
Page 4 of 13

the amendment."[17] Good cause exists when "scheduling deadlines cannot be met despite [a] party's diligence."[18] "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."[19] The party seeking amendment should first move to amend the scheduling order, and should not rely solely on a motion for leave to amend its pleading.[20] Here, Ms. Nelson properly moved to amend the scheduling order.

If good cause is shown under Rule 16(b), the party must then also demonstrate that the amendment is proper under Rule 15(a). Under this rule, "a district court must consider whether the proposed amendment results from undue delay, is made in bad

---

[17] *Johnson v. Mammoth Recreations, Inc.,* 75 F.2d 604, 609 (9th Cir. 1992) (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).

[18] *Johnson*, 75 F.2d at 609 (citing 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1522.1 at 231 (2d ed. 1990)).

[19] *Id.* (citing *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

[20] *Johnson*, 75 F.2d at 608) (suggesting that parties must move to amend the scheduling order); *Jauregui v. City of Glendale,* 852 F.2d 1128, 1133–34 (9th Cir.1988) (holding party bound by facts stipulated to in pretrial order when party failed to seek modification of order from court); *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff,* 768 F.2d 1099, 1104 (9th Cir.1985), *superseded by statute on other grounds as recognized in MHC Fin. Ltd P'ship v. City of San Rafael*, 714 F.3d 1118, 1125 (9th Cir. 2013) (court may deny as untimely motion to amend filed after scheduling order cut-off date when no motion to modify scheduling order was made).

faith, will cause prejudice to the opposing party, or is a dilatory tactic."[21]  Amendment under Rule 15 may also be denied if the proposed amendment is futile.[22]

### 3. Analysis

*A. Good Cause under Rule 16(b)*

The Government contends that Ms. Nelson does not meet the standard of diligence required by Rule 16.[23] The Government cites to its October 21, 2016 Answer, which indicated both doctors were locum tenens contractors, and notes that Ms. Nelson did not seek to assert claims for negligent supervision until July 2017.[24] But in October 2016 Ms. Nelson was not aware that the Government would subsequently rely on the doctors' tenens locum agreements to challenge the Court's jurisdiction. It was only upon receipt of the May 23, 2017 email that Ms. Nelson's counsel learned of the Government's plan to raise the doctors' independent contractor status as an affirmative defense. The Government correctly notes that parties may object to subject-matter jurisdiction at any time.[25] However, Ms. Nelson's failure to anticipate that objection prior to the deadline to

---

[21] *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

[22] *See Missouri ex rel. Koster v. Harris,* 847 F.3d 646, 655 (9th Cir. 2017), *cert. denied sub nom. Missouri ex rel. Hawley v. Becerra,* 137 S.Ct. 2188 (2017) (citations omitted).

[23] *See* Docket 21 at 9–12.

[24] Docket 21 at 11.

[25] *See* Docket 21 at 12; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

amend in the scheduling order does not amount to inadequate diligence, especially when the parties agreed in their initial report that they did not foresee any objection to subject-matter jurisdiction.[26]

The Government maintains that *Johnson v. Mammoth Recreations, Inc.* supports the denial of Ms. Nelson's motion.[27] There, Johnson filed suit after sustaining an injury due to an alleged ski lift malfunction, but failed to name the entity that owned and operated the ski resort as a defendant, naming the holding company instead. Despite defense counsel's prompt notifications to Johnson of the mistake, Johnson did not timely move to amend the complaint to add the correct party until four months after the deadline. The trial court denied the motion as lacking good cause. On appeal, the Ninth Circuit affirmed: "[f]ailing to heed clear and repeated signals that not all the necessary parties had been named in the complaint does not constitute diligence."[28]

The circumstances here are significantly different from *Johnson*. Unlike the repeated and explicit warnings received by the plaintiff in *Johnson*, Ms. Nelson's only notice as to the potential jurisdictional challenge came from a single sentence in the Government's Answer stating that Dr. Jacobs and Dr. Westerfield were "locum tenens

---

[26] *See* Docket 14 at 5.

[27] *See* Docket 21 at 9–11 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 606 (9th Cir. 1992).

[28] *Johnson*, 975 F.2d at 606.

Case No. 3:16-cv-00181-SLG
Order Re Motion To Amend
Page 7 of 13

contractors."[29] And under Alaska law, a locum tenens permit can be issued in three circumstances, two of which use the term "employment."[30] Furthermore, the Alaska Attorney General's Office has opined that "FTCA coverage generally extends to tribal health program employees and tribal personal service contractors, where they are performing services under an ISDEAA agreement."[31] Based on the foregoing, Ms. Nelson did not evidence a lack of diligence when she did not anticipate the prudence of asserting negligent supervision and retention claims until her receipt of the May 2017 notice from the Government. And thereafter, she moved with reasonable diligence both to obtain the locum tenens agreements and to file the motion to amend the scheduling order. The Court finds that Ms. Nelson has demonstrated the requisite good cause to permit the proposed amendment under Rule 16(b).

---

[29] *See* Docket 11 at 2, ¶ 4 ("Defendant United States of American denies that D[r]. Julie Jacobs and Dr. Jeffrey Westerfield were employed by the Indian Health Service through BBAHC and/or ANTHC, as both were locum tenens contractors at all times relevant to the allegations in the complaint.").

[30] AS § 08.64.275(a) ("A member of the board or its executive secretary may grant a temporary permit to a physician or osteopath for the purpose of
(1) substituting for another physician or osteopath licensed in this state;
(2) being temporarily employed by a physician or osteopath licensed in this state while that physician or osteopath evaluates the permittee for permanent employment; or
(3) being temporarily employed by a hospital or community mental health center while the facility attempts to fill a vacant permanent physician or osteopath staff position with a physician or osteopath licensed in this state.").

[31] *See* Docket 27 at 2 (quoting 2012 Alaska Op. Att'y Gen., AGO No. AN2009102500, 2012 WL 1515178 (2012)).

Case No. 3:16-cv-00181-SLG
Order Re Motion To Amend
Page 8 of 13

*B. Prejudice*

The Government also asserts that the proposed amended complaint should not be allowed because granting leave to amend would be prejudicial to the Government, because "[t]he new causes of action do not arise from the same facts as Ms. Nelson's medical malpractice claims and will create case management issues."[32] However, Ms. Nelson's new claim for negligent supervision largely implicates factual issues already placed in controversy by the original Complaint—namely, the experience and supervision of the physicians who treated Mr. Nelson.[33] To the extent that the Government will need to expand the scope of its investigation or amend its pleadings, Ms. Nelson has expressed willingness to accord the Government additional time to evaluate the amended claims.[34] Furthermore, the Motion to Amend was filed on July 7, 2017, little more than 60 days after the April 30, 2017 deadline and well before the December 8, 2017, current date for the close of discovery.[35]

The Government maintains that allowing the amendment would be additionally problematic because "if it is discovered during the course of the investigation on the new causes of action that there are third-parties, *i.e.*, employment service providers, who

---

[32] Docket 21 at 13.

[33] *See* Docket 1 at 1–6, ¶ 1–23.

[34] Docket 25 at 7–8.

[35] *See* Docket 17; Docket 15.

should be added for fault purposes, the United States would be prevented from doing so because the time for amendment has passed."[36] But not only has Ms. Nelson stated her willingness to modify such deadlines in order to accommodate the Government's response, but the Federal Rules of Civil Procedure permit the Government to move to add another party.[37] Accordingly, the likelihood of prejudice is low.

*C. Futility under Rule 15(a)*

The Government argues that the motion should be denied under Rule 15(a) because the proposed amendment would be futile.[38] The Government maintains that Ms. Nelson failed to give adequate notice to the agency of her new causes of action, as required for claims under the Federal Tort Claims Act.[39] The Government's argument depends on a finding that the new claims are based on facts not contained in the SF-95 form that Ms. Nelson completed as part of her administrative claim.

"The recognized purpose of the FTCA is to provide compensation to those injured by the government's torts."[40] To fulfill the requirements of FTCA § 2675(a), a claimant

---

[36] Docket 21 at 15.

[37] *See generally* Fed. Rules Civ. Pro. 15, 16.

[38] Docket 21 at 4-9, citing *Missouri ex rel. Koster v. Harris,* 847 F.3d 646, 655 (9th Cir. 2017), *cert. denied sub nom. Missouri ex rel. Hawley v. Becerra,* 137 S.Ct. 2188 (2017) (citations omitted).

[39] Docket 21 at 5–6; 28 U.S.C. § 2675(a); *Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 778 (9th Cir. 1984).

[40] *Blair v. I.R.S.,* 304 F.3d 861, 868 (9th Cir. 2002).

Case No. 3:16-cv-00181-SLG
Order Re Motion To Amend
Page 10 of 13

need only "give[] notice of the manner and general circumstances of injury and the harm suffered, and a sum certain representing damages[.]"[41] "[A] skeletal claim form, containing only the bare elements of notice of accident and injury and a sum certain representing damages, suffices to overcome an argument that jurisdiction is lacking."[42] "The claim presentation requirement of the FTCA is designed to ensure that compensation is provided in a fair and equitable manner, not to provide a basis for a regulatory checklist, which, when not fully observed, permits the termination of claims regardless of their merits."[43] "This claim requirement is jurisdictional and cannot be waived."[44]

The Government cites *Langley v. United States* in support of its position on futility.[45] In that case, the plaintiff filed her FTCA claim after she fell and was injured on a set of stairs located on a military base. Both her administrative claim and initial complaint alleged that the plaintiff had tripped on a protruding metal strip at the edge of the stairs, which she claimed were poorly maintained. But the plaintiff later sought to

---

[41] *Avery v. United States*, 680 F.2d 608, 610-11 (9th Cir. 1982).

[42] *Id.*

[43] *Blair,* 304 F.3d at 868 (internal citations omitted).

[44] *Rooney v. United States,* 634 F.2d 1238, 1242 (9th Cir. 1980).

[45] *See* Docket 21 at 7–8 (citing *Langley v. United States*, 182 F.Supp.2d 996, 1001 (D. Haw. 2002)).

amend her complaint to allege a design defect, alleging that the individual stairs were of differing widths and the staircase lacked a needed handrail. The district court held that the plaintiff had not exhausted her administrative remedies on a design defect claim because the administrative claim did not put the Navy on notice of any defect. The district court held, "[The plaintiff]'s claim that she missed the second step from the top because it was narrower than the other steps cannot possibly be said to be based on the facts presented by a claim that a metal strip at the top of the stairs caused the fall."[46]

Here, by contrast, the facts presented in Ms. Nelson's SF-95 form provide adequate notice of the proposed amended claims. Ms. Nelson asserted that "Mr. Nelson was misdiagnosed by doctors and employees at Kanakanak hospital" and died two weeks later.[47] Attached to the SF-95 form was the Declaration of Dr. David Goldstein, who opined that the treatment of Mr. Nelson at Kanakanak Hospital was below the standard of care and directly led to his death.[48] In *Langley*, the court concluded that a "reasonable investigation" of the plaintiff's administrative claim would not have led the [defendant] to

---

[46] *Langley*, 182 F.Supp.2d at 1001.

[47] Docket 21-1.

[48] *See* Docket 21-1 at 4–5, ¶ 7, 10 ("[I]t is more likely than not that had Mr. Nelson been evaluated properly at Kanakanak Hospital by Drs. Jacobs and/or Westerfield that the sign posts of a serious infection would have been then discovered, and Mr. Nelson would have been admitted to a hospital for further evaluation . . . [I]t is my opinion, to a reasonable degree of medical certainty that Mr. Nelson's worsening condition . . . was more likely than not as a direct result of the physicians at Kanakanak Hospital failure to evaluate. It is my opinion to a reasonable degree of certainty that [the examination record] demonstrates the treatment of Mr. Nelson on and after May 10, 2013, by Kanakanak Hospital, was below the standard of care.").

a discovery of the alleged design defect.[49] Here, a reasonable investigation of Ms. Nelson's administrative claim would likely have encompassed the professional experience and oversight of Dr. Jacobs and Dr. Westerfield, including their hiring, training, retention, and supervision. Accordingly, the facts Ms. Nelson presented in her administrative claim were sufficient to put IHS on notice of Ms. Nelson's proposed amended claims.[50]

## CONCLUSION

In light of the foregoing, Ms. Nelson's Motion to Amend Pretrial Scheduling Order To Allow Plaintiff To File Her Amended Complaint at Docket 17 is GRANTED, and Ms. Nelson is directed to file a previously undocketed version of the Amended Complaint, lodged at Docket 17-1, within 5 days of this order.

DATED this 5th day of September, 2017.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[49] *Langley*, 182 F.Supp.2d at 1001.

[50] *See Rooney v. United States*, 634 F.2d 1238, 1242 (9th Cir. 1980) (holding district court properly exercised jurisdiction over amended complaint including causes of action for negligent supervision when SF-95 claim was for "injuries sustained as a result of fall and subsequent care."). *See also Goodman v. United States*, 298 F.3d 1048, 1055 (9th Cir. 2002) (holding that administrative claim alleging negligent care and treatment by hospital personnel provided adequate notice of claim for lack of informed consent for FTCA § 2675(a)).